Rodney PRICE, Kenneth Price, and Randy Price
*v.* Virginia Sue PRICE

99-470                                            16 S.W.3d 248

Supreme Court of Arkansas
Opinion delivered May 18, 2000

*Jim Gunter*, Probate Judge;

*James E. Davis*, for appellants.

*Clarke D. Arnold*, for appellee.

TOM GLAZE, Justice. This court accepted jurisdiction of the appeal because it presents a significant issue needing clarification or development of the law and also requires our interpretation of an act of the General Assembly. Ark. Sup. Ct. R. 1-2(b)(5), (6) (2000). Specifically, we are asked whether Ark. Code Ann. § 16-65-121 (Supp. 1999) or Ark. R. Civ. P. 58 controls the facts in this case.

The facts are undisputed. Charles and Sue Price were married and had three sons. In 1977, they divorced and remarried; they later filed again for divorce in 1997. The second divorce proceeding is in issue here. On July 23, 1997, the chancellor announced from the bench that Sue Price be awarded the divorce, and at the same proceeding, the parties' stipulated agreement concerning property, debts, fees, and costs, was read into the record and acknowledged by both of them. On August 8, 1997, Charles was killed in a car accident before the parties' divorce decree was entered. In fact, the parties' decree was not filed of record until June 19, 1998. *See Price v. Price*, 337 Ark. 372, 990 S.W.2d 514 (1999) (per curiam).[1] On August 8, 1998, Sue Price filed a petition

---

[1] Sue Price untimely filed an appeal from the divorce proceeding, but when she filed a motion for rule on the clerk, the court denied her request. Citing *Childress v. McManus*, 282 Ark. 255, 668 S.W.2d 9 (1984), Sue posited that the death of a party nullifies the validity of a subsequent divorce decree. While we agreed, we further recognized that it is not necessary to appeal from a void order because it never became effective, and a void order is subject to collateral attack. This probate proceeding, of course, does collaterally attack the Prices' July 23, 1997, divorce proceeding.

in the Miller County Probate Court, seeking to be appointed administratrix of Charles's estate and asserting she was entitled to the appointment because she was Charles's surviving spouse.[2] The Prices' adult sons contested Sue's appointment, stating she was not married to Charles at the time of his death. They claimed that Sue had been awarded a final divorce on July 23, 1997, and therefore was not Charles's surviving spouse when he was killed on August 8, 1997. The probate judge ruled that, for the purpose of this proceeding, the Prices' divorce was not final and in effect because Charles died before the Prices' decree had been entered. As a consequence, the judge determined the Prices were still married when Charles was killed. Even so, the judge denied Sue's request to be administratrix, and instead appointed one of the sons, Kenneth Price, as administrator.[3] The Prices' sons, Rodney, Kenneth, and Randy ("the sons"), appeal the judge's ruling finding Sue to be Charles's surviving spouse. They further claim that because she is not Charles's surviving spouse, she is not entitled to share in his estate. Sue does not challenge or appeal Kenneth's appointment as administrator.

In their appeal, the sons rely on Act 98, § 1 of 1989 (3rd Ex. Sess.), codified at Ark. Code Ann. § 16-65-121 (Supp. 1999), which, in relevant part, provides, "All *judgments, orders, and decrees . . . are effective* as to all parties of record *from the date rendered* and not from the date of entry of record." (Emphasis added.) Act 98, § 2 of 1989 (3rd Ex. Sess.), codified at Ark. Code Ann. § 16-67-101 (Supp. 1999), provides that the "time for filing a notice of appeal shall commence upon the filing and entry of record of the judgment, order, or decree pursuant to Rule 4 of the Arkansas Rules of Appellate Procedure." The sons reason that, under these 1989 statutory provisions, the chancellor's oral pronouncement rendering Sue a divorce on July 23, 1997, was effective on that date.

Sue, on the other hand, relies on Ark. R. Civ. P. 58, which in pertinent part reads as follows: "Every judgment or decree shall be

---

[2] Charles's estate was established to pursue a wrongful death lawsuit and to administer his assets, debts, and financial affairs

[3] The record reflects "the son" was the appropriate person to be administrator, and since Kenneth Price was the only son to apply for appointment, we assume he was appointed administrator even though Rodney is the only Arkansas resident. No real issue is raised regarding the appointment of the administrator, and we assume the probate judge will clarify this point at some stage of the proceeding

set forth on a separate document. *A judgment or decree is effective only when* so set forth and *entered as provided in Administrative Order No. 2."* (Emphasis added.) Administrative Order No. 2 provides that a judgment, decree, or order is entered when so stamped or marked by the clerk. Sue argues that, under Rule 58 and Administrative Order No. 2, the chancellor's pronouncement awarding her a divorce on July 23, 1997, was not effective on that date, since no separate decree or order had been filed and entered before Charles's death. Thus, Sue asserts she is entitled to share in Charles's estate as his surviving spouse.

■ Although our court has never had the occasion to consider § 16-65-121, we have interpreted this court's Rule 58 and Administrative Order No. 2 in a situation much like the one now before us. In *Standridge v. Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989), the chancellor heard a divorce proceeding on October 5, 1984, between Terry and Annie Thacker, and at the end of the hearing, the chancellor wrote in his docket book, "decree — a little unusual but it may work." The chancellor's concern apparently was that the father, Terry, was to have custody of the couple's daughter and Annie was to have custody of their son. Two days later, and before the Thackers's divorce decree was finally filed with the court clerk, Annie and Carroll Standridge married. After their marriage, Carroll was killed in a motorcycle accident. Annie, as Carroll's surviving spouse, was appointed administratrix of Carroll's estate. However, Carroll's former wife, Sharon, contested Annie's appointment, contending Annie's marriage to Carroll was invalid because, at the time of the marriage, Annie's divorce from Terry was not final, since a separate divorce decree had not been filed as required by Ark. R. Civ. P. 58. In a 4-3 decision, this court held in Sharon's favor. The *Standridge* court held that a judgment or decree is not effective until it is entered as provided in Rule 58 and Administrative Order No. 2 and further concluded that an announcement of the divorce from the bench is insufficient to effect the divorce. The court explained that the purpose of Rule 58 was to provide a definite point at which a judgment, be it a decree of divorce or other final judicial act, becomes effective. This court's interpretation of Rule 58 in *Standridge* has been followed repeatedly by our court and the court of appeals. *Shackelford v. Ark. Power & Light Co.*, 334 Ark. 634, 976 S.W.2d 950 (1998); *Blaylock v. Shearson Lehman Bros., Inc.*, 330 Ark. 620, 954 S.W.2d 939 (1997); *Clayton v. State*, 321

Ark. 217, 900 S.W.2d 537 (1995); *General Motors Acceptance Corp. v. Eubanks*, 318 Ark. 640, 887 S.W.2d 292 (1994); *Nance v. State*, 318 Ark. 758, 318 S.W.2d 758 (1994); *Kelly v. Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992); *A-1 Bonding v. State*, 64 Ark. App. 135, 984 S.W.2d 29 (1998); *Morrell v. Morrell*, 48 Ark. App. 54, 889 S.W.2d 772 (1994); *Brown v. Imboden*, 28 Ark. App. 127, 771 S.W.2d 312 (1989).

The sons are well aware of the *Standridge* decision and its progeny, and while they do not ask us to overturn those decisions, they submit the General Assembly essentially did so seven months after *Standridge* when it enacted § 16-65-121. Quoting richly from the dissenting opinion in *Standridge*, the sons submit that § 16-65-121 merely reaffirmed the original meaning of Rule 58 so as to assure any citizen that a decision made in open court by a judge would finally decide the merits of his claim without waiting for the filing and entering of a separate decree, judgment, or order. Unquestionably, this argument presents us with the conflict between this court's Rule 58, as it was interpreted in *Standridge*, and the General Assembly's enactment of § 16-65-121.[4]

■ In *State v. Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990), the court was confronted with a situation where a conflict arose between rules established by this court and legislation enacted by the General Assembly. The court set out the following analysis and approach as to how it would deal with such conflicts: "To protect what we hold inviolate we now declare that we will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme."

■ An exception to the foregoing rule exists when the statutory rule is based upon a fixed public policy which has been legislatively or constitutionally adopted and has as its basis something other than court administration. *See Citizens for a Safer Carroll County v. Epley*, 338 Ark. 61, 991 S.W.2d 562 (1999) (where the General Assembly's statute required a shorter appeal time than the court's procedural rule, the court held the statute controlling

---

[4] An apparent conflict between § 16-65-121 and Rule 58 was footnoted in *McCarther v. Green*, 49 Ark. App. 42, 895 S.W.2d 562 (1995), but the court of appeals did not address the issue because, while the trial court's ruling was on the record, it was not rendered in open court.

because it was based on the strong public policy that local option election matters should be advanced).

■ As generally discussed above, this court has recognized that Rule 58 is a matter pertaining to court administration whereby it provides a definite point at which a judgment becomes effective. Establishing that point to be the moment at which the court's written precedent is filed can eliminate or at least reduce disputes between litigants over what a trial court's oral decision in open court entailed. Such disputes inevitably delay the filing of appeals, which is at odds with this court's procedural objective of moving appeals expeditiously. *Cf. Alexander v. Beaumont*, 275 Ark. 357, 629 S.W.2d 300 (1982).

■ In conclusion, we hold that Rule 58, not § 16-65-121, controls the facts in this case and that the rule effectively supersedes that statute. Therefore, we affirm the lower court's decision.